UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | No.:1:13-cr-21 |
| v. | ) | |
| | ) | Collier/Carter |
| | ) | |
| JAMES J. EASTMAN | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant James Eastman's Motion to Suppress (Doc. 17) is before the undersigned Magistrate Judge having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Defendant is charged with a bank robbery, a Hobbs Act robbery, two carjackings and six federal firearm crimes. The Defendant seeks suppression of any and all evidence seized by law enforcement from Room 106 of the Hampton Inn on Williams Street in Chattanooga Tennessee on June 8, 2012, on the ground that the consent given by Ms. Keosha Kellogg was not sufficient to overcome Defendant's reasonable expectation of privacy in the premises searched. Because I find that Kellogg had the necessary common authority to give consent to search the motel room and its contents and Defendant's consent was not required, it is RECOMMENDED that the Defendant's motion to suppress be DENIED.

II. Relevant Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on Wednesday, September 18, 2013. FBI Safe Streets Task Force Officer Matthew Hennessey was the only

1

witnesses to testify. Officer Hennessey is employed by the Chattanooga Police Department and has been assigned to the FBI Safe Streets Task force for the past twelve years. Officer Hennessey testified about the June 8, 2012 arrest of Defendant at the Hampton Inn.

On June 8, 2012, Officer Hennessey was participating in the investigation of a carjacking of a grey Dodge Dakota 4 door pickup truck. Shortly after the carjacking the vehicle was located at the Comfort Inn on 25th and Williams Street, near Howard High School in Chattanooga. Hennessey was aware of an outstanding federal arrest warrant for Eastman, a suspect in the carjacking. The arrest warrant was introduced as an exhibit at the hearing. It was issued on June 5, 2012. Investigators from the FBI, Chattanooga Police Department, as well as U.S. Marshal's Service were participating in the investigation. They were all attempting to track down the driver of the truck which had been abandoned. They checked three local nearby motels. Investigating officers went to the Hampton Inn and discovered that a known associate of Mr. Eastman, Keosha Kellogg ("Kellogg") had rented a room. Other police officers reported this connection to Hennessey. Following this lead, law enforcement officers placed a call from the front desk to the room Kellogg had rented. A man answered the phone and the investigator, who made the call in an attempt to get Eastman to leave the room, told him there was a gas leak and everyone needed to leave their rooms. Eastman did not leave the room. In order to effect Eastman's arrest officers obtained a master key from the motel and went to the room and knocked. Eastman opened the door and was visually identified by the officers. Eastman then slammed the door on the officers who then used a master key to obtain entrance. They told Eastman he was under arrest on the probation violation warrant and ordered him to the floor directing him to put his hands behind his back. Eastman refused and fought with law enforcement officers. One of the Chattanooga Police officers deployed his tazer on him on two

occasions. After this brief struggle Defendant was taken into custody. The room was not searched at that time although officers may have seen incriminating objects in plain view. Officers left and secured the room. Pursuant to CPD policy Defendant was taken to the lobby of the motel for treatment by paramedics and thereafter he was taken to the hospital and to jail, also pursuant to CPD policy. When asked about the room he was in, he denied ownership saying it was not his room.

Officer Hennessey and other officers then commenced an investigation using computers to locate the address of Kellogg, who they knew to be the person who rented the room. They succeeded and went to Kellogg's residence, where she lived with her mother. When Officers arrived she was at home with her mother. Officer Hennessey interviewed Kellogg in the presence of her mother. There were two other investigators who were at times inside and outside of the house, but the interview was conducted by Hennessey. The interview was a cordial one, there were no threats of any kind. Hennessey first gave them background information about the events that occurred at the motel. Kellogg was not a suspect and was not arrested. The conversation was polite and Kellogg freely gave consent to search the room she had rented at the motel. Kellogg told Hennessey how she knew Eastman and said that she had met him earlier that day and how she rented the room for him. She paid $107.00 for the room and Eastman paid her $125.00. They both planned to go back to the room that night.

After receiving consent, Officer Hennessey called back to agents on the scene at the motel and advised that he had verbal consent from Kellogg to search the room. Agents on the scene then searched the room and recovered the items Defendant now seeks to suppress.

### III. Analysis

Defendant has moved to suppress this search arguing, *inter alia*, that Ms. Kellogg lacked

3

common authority to consent to the search of the motel room since they did not have consent from Eastman and the government, at the time of the search, was aware that Kellogg told them she rented the room for Eastman. The Government in their written response addresses only the validity of the consent given by Kellogg because the additional issue was not raised by Defendant in his original motion. In the hearing the question was raised as to whether the information from Kellogg, that she rented the room for Eastman, coupled with the statement from Defendant that it was not his room, essentially abandoning any interest in the room, was a contradiction that required the government to get consent from Eastman. For reasons that follow I conclude his consent was not required.

*1. Consent*

Valid consent to search a premises is recognized as an exception to the Fourth Amendment's requirement of a search warrant. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). The government bears the burden of demonstrating that consent was "freely and voluntarily given," without influence of duress, coercion, or mere submission to authority. *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968), *United States v. Van Shutters,* 163 F.3d 331, 335 (6th Cir.1998). That burden must be met with "clear and positive testimony." *United States v. Hurst,* 228 F.3d 751, 757 (6th Cir. 2000); *Van Shutters*, 163 F.3d at 336. The government need not prove that it was the defendant himself who gave consent to search. "A search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common authority over the premises." *United States v. Clutter,* 914 F.2d 775, 777 (6th Cir.1990); *see also United States v. Matlock,* 415 U.S. 164, 171 (1974) (holding that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that the consent was given by the defendant, but may show that permission to search was obtained from a

4

third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.") The Court in *Matlock* explained that common authority does not merely relate to the property interest a third-party may have in the property, and stated that "[t]he authority which justifies the third-party consent does not rest upon the law of property. *United States v. Matlock,* 415 U.S. 164, 171 (1974). Further, the Court explained that common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.; see also United States v. Burns*, 298 F.3d 523, 542 (6th Cir. 2002) ("The concept of 'common authority or control' enables a co-occupant such as Burns to consent to a search if that party has the right to use or possess the property.")

The Defendant argues that Kellogg lacked common authority to consent to the search of the motel room. According to defendant, Kellogg could not give valid consent on his behalf to search the motel room because officers knew Kellogg rented the room for Eastman.

As previously discussed, it is well settled that a person with common authority over the premises to be searched may give valid consent to search the premises. *United States v. Matlock,* 415 U.S. 164, 170 (1974) ("the consent of one who possesses common authority over premises or effects is valid as against the absent, non-consenting person with whom that authority is shared…."). In *Matlock*, police asked the girlfriend of the defendant for permission to search her and the defendant's bedroom. This conversation took place at the front door of the house while the defendant was detained in a squad car parked nearby. The *Matlock* Court concluded the girlfriend, as co-occupant of the bedroom, had common authority to give valid consent and that

5

the consent of the defendant, who had been absent from the discussion between police and his girlfriend, was not necessary for police to legally search the bedroom. *Id.* at 170 and 177. In this case Kellogg actually rented the room and said she and Eastman planned to return to it that night. Further, Eastman disavowed any expectation of privacy when he told police officers it was not his room.

On the other hand, it is also well settled that if a co-occupant of the premises to be searched is present at the time consent is given by the other co-occupant and if he or she expressly refuses consent, then the consent to search is not valid for Fourth Amendment purposes. *Georgia v. Randolph,* 547 U.S. 103, 105 (2006) *(*wife's consent to search residence was deemed invalid as to her husband where husband was present during the conversation about consent and he expressly refused consent.) As stated by the *Randolph* Court, "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out."), *accord United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007)*; United States v. Penney*, 576 F.3d 297, 309 (6th Cir. 2009). Stated another way, police do not have an affirmative duty to seek out a nearby co-occupant to ask for consent when another co-occupant with common authority has already given it. Police may not, however, remove a co-occupant from the premises to be searched specifically for the purpose of avoiding an objection to the consent to search. *Randolph*, 547 U.S. at 121 ("So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand….")

6

Case 1:13-cr-00021-CLC-WBC   Document 33   Filed 10/22/13   Page 6 of 8   PageID #: 83

With these principles in mind, I will first examine whether Kellogg had common authority over the motel room and then consider whether Eastman was "present" at the time consent was given.

Kellogg was the person who actually rented the room using her credit card. Kellogg planned to meet Eastman at the room later that evening. Although the timing is not clear, Eastman was taken away from the room for medical treatment first by paramedics and then was taken to the hospital and jail. There is no evidence of any kind that he was present at the room at the time consent was given and the search conducted. Further, Eastman denied a possessory interest in the room, having told officers it was not his. Kellogg's intended mutual use of the room and the fact that she herself rented the room was sufficient to establish common authority over the room. Defendant was not present at the time police asked Kellogg for consent to search the motel room and was not present at the time of the search. He had been taken away for treatment pursuant to Chattanooga Police Department policy for anyone who has been tazed. Consequently, pursuant to *Matlock* and *Randolph,* his consent was not required to search the motel room. Furthermore, he had given up any expectation of privacy in the room by telling officers it was not his room. I conclude the search of the vehicle meets constitutional muster.

## IV. Conclusion

Accordingly, for the reasons stated herein, it is RECOMMENDED that the Defendant's motion to suppress be DENIED.[1]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).