UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No.:1:13-cr-21 |
| v. | ) | |
| | ) | Collier/Carter |
| | ) | |
| JAMES J. EASTMAN | ) | |

SUPPLEMENTAL REPORT AND RECOMMENDATION

I. Introduction

On October 22, 2013, the undersigned entered a report and recommendation [Doc. 33] to deny the defendant James J. Eastman's motion to suppress. [Doc. 17]. Defendant sought suppression of evidence found in a motel room which had been rented by Keosha Nycole Kellogg. The undersigned recommended the motion be denied on the ground that Ms. Kellogg had given valid consent to search the room.

At the time of the original suppression hearing, Ms. Kellogg was unavailable to testify. She has since become available, and, on January 6, 2014, the undersigned reopened the evidence in order to allow her to testify concerning the issue of her consent to search the motel room. The undersigned's previous report and recommendation [Doc. 33] is incorporated *in toto* herein. Because the undersigned still concludes Ms. Kellogg gave her valid consent to search Room 106 of the Hampton Inn on Williams Street in Chattanooga Tennessee on June 8, 2012, it is RECOMMENDED defendant's motion to suppress be DENIED.

1

## II. Facts

On January 6, 2012, Keosha Kellogg testified as follows: at defendant's request, she agreed to use her debit card to rent a room at the Hampton Inn on June 8, 2012 in Chattanooga, Tennessee. Defendant reimbursed her for the cost of the room that same day. She spent less than an hour in the room and then went to her home which she shared with her mother. She intended to go back to the room later to see the defendant and perhaps spend the night.

Later on June 8, 2012, police from the Chattanooga Police Department (CPD) arrived at Kellogg's home. Ms. Kellogg was sleeping, and her mother answered the door. After her mother called for her, she came to the door. An officer told her to step outside and she did. There were 10 to 15 police officers present, some surrounding the house, all with guns drawn though no-one had a firearm pointed at her. Two of the officers were carrying assault rifles. At the request of one of the officers, Kellogg's mother gave consent to search the house. Police then conducted a brief sweep of the premises.

One of the officers asked Kellogg if she knew why they were there. She did not. He asked if she knew James Eastwood, and she indicated she did. The officer told her that Eastwood was the reason for their visit. Michael Hennessy of the CPD then arrived on the scene and asked Kellogg if he could come inside the house with her to talk. Hennessey did not draw his firearm, and Kellogg was not cuffed. One other officer accompanied Hennessey and Kellogg inside, but that officer did not say anything during the conversation. Hennessey was polite and cordial, and there were no promises or threats made to Kellogg. Hennessey told her that defendant had committed several crimes. Kellogg specifically testified at the supplemental suppression hearing that she does not remember whether Hennessey asked her for consent to search the Hampton Inn motel room, and she also testified that there was no reason for her not to

2

cooperate by providing her consent.

After talking at her mother's house, Hennessey asked Kellogg to come downtown to the police station, and she agreed. She was not handcuffed and no guns were drawn. The conversation at the police station was cordial, and she was told she would not be charged with anything because the police believed she was not involved in the roberries for which the defendant was arrested. Kellogg did not remember whether she was asked for consent to search the Hampton Inn motel room during her conversation with Hennessey at the police station.

On June 10, 2012, Kellogg sent defendant a letter in the county jail in which she told defendant that the day defendant was arrested, the police came to her house with guns, threatened her, and "tried" to search her house and car.

### III. Analysis

The undersigned finds nothing in Ms. Kellogg's testimony to alter my original conclusion that Ms. Kellogg knowingly and voluntarily gave her consent to search the Hampton Inn motel room at issue in this case. She cannot remember at this point whether she was asked or not asked for consent to search, but, in the first suppression hearing, Officer Hennessey testified affirmatively that he asked for consent and she gave it to him. I credited Hennessey's testimony and still do. Furthermore, Ms. Kellogg confirmed Hennessey's original testimony that his conversations with Kellogg were cordial and that no threats or promises were made to induce or coerce Kellogg to give her consent to search. While Kellogg's initial encounter with police carrying firearms was rattling, she was clear in her testimony on January 6, 2014, that her conversations with Hennessey were not. I note that the June 10, 2012 letter Kellogg sent to defendant indicted she felt threatened, however, her testimony in the supplemental suppression hearing unequivocally indicated she did not feel threatened in her subsequent conversations with

3

Case 1:13-cr-00021-CLC-WBC   Document 39   Filed 01/09/14   Page 3 of 4   PageID #: 99

Hennessey. Based on the totality of circumstances, I conclude, as I did after the first evidentiary hearing, that Kellogg knowingly and voluntarily gave her consent to search the Hampton Inn motel room at issue.

## IV. Conclusion

For the reasons stated herein and in the undersigned's first report and recommendation [Doc. 33] entered on October 22, 2013, it is RECOMMENDED [1] that defendant's motion to suppress be DENIED.

SO ORDERED.

ENTER.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).