UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:13-CR-21 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| JAMES J. EASTMAN ) | |

## **M E M O R A N D U M**

Defendant James J. Eastman ("Defendant") filed a motion to suppress evidence discovered after an allegedly unlawful search of a motel room (Court File No. 17). The motion was referred to United States Magistrate Judge William B. Mitchell Carter, who held a hearing on September 18, 2013 and subsequently filed a Report and Recommendation ("R&R") concluding that Defendant's motion should be denied (Court File No. 33). Upon Defendant's request (Court File No. 34), and without objection by the government (Court File No. 35), on January 6, 2014 the Magistrate Judge held an additional hearing to consider testimony of subpoenaed witness Keosha Kellogg ("Kellogg"). The Magistrate Judge then filed a Supplemental R&R, which again concluded that the evidence should not be suppressed (Court File No. 39). Defendant subsequently filed an objection to the Supplemental R&R (Court File No. 41).

**I.  RELEVANT FACTS**

The following recitation of facts is derived primarily from the Magistrate Judge's R&R and Supplemental R&R. On June 8, 2012 federal and local law enforcement agents went to serve arrest warrants on Defendant at the Hampton Inn on Williams Street in Chattanooga, Tennessee. After officers knocked on his motel-room door, Defendant opened it and was visually identified by officers. He shut the door, but officers used a master key to gain entrance. After being told he was under arrest on a federal probation violation warrant, Defendant resisted and an officer had to twice

use a taser to subdue him. The room was not searched at this time. Defendant was brought to the lobby for treatment by paramedics and then taken to the hospital, in accordance with Chattanooga Police Department policy. Defendant denied that the room in which he was found was his.

Upon learning that Keosha Kellogg ("Kellogg"), an associate of Defendant, had rented the room in which he was arrested, officers went to her home where she lived with her mother. Ten to fifteen officers surrounded the home with guns drawn, though none was pointed at anyone. Two officers with guns holstered were given consent to enter the home, and one explained to Kellogg that they were investigating Defendant. Kellogg testified that the officers were cordial and did not make any promises or threats. Kellogg, who was never put in handcuffs, agreed to come to the police station, where she had a cordial conversation with police and was told she was not a suspect.

Kellogg told Officer Hennessey that at Defendant's request she had used her debit card to rent the motel room and that Defendant had reimbursed her. She spent less than an hour in the room during the day but said she planned to return in the evening and perhaps spend the night there with Defendant. Officer Hennessey testified that Kellogg gave consent to search the Hampton Inn motel room. Kellogg testified that she did not remember whether she was asked for consent (either at her home or the police station); however, she testified that there would have been no reason for her not to cooperate and give consent. Officer Hennessey radioed officers at the motel to let them know Kellogg consented to a search of the room. Officers then searched the room and seized the evidence Defendant seeks to suppress.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court to rehear

witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. DISCUSSION

Defendant objects to two determinations made by the Magistrate Judge: (1) that Kellogg voluntarily consented to a search of the Hampton Inn motel room, and (2) that Kellogg had the authority to consent to such a search.

### A. Voluntary Consent

The government bears the burden of demonstrating that "consent was 'freely and voluntarily given,' and was not the result of coercion, duress, or submission to a claim of authority." *United States v. Van Shutters,* 163 F.3d 331, 335 (6th Cir. 1998) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). That burden must be met with "clear and positive testimony." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000); *Van Shutters*, 163 F.3d at 336.

In the initial R&R the Magistrate Judge found credible Officer Hennessey's testimony that Kellogg gave voluntary consent to search the room (Court File No. 33). The Magistrate Judge reached the same conclusion in the Supplemental R&R, after having heard Kellogg's testimony (Court File No. 39). It is notable that Kellogg's testimony did not actually refute that she gave consent. Her testimony was merely that she did not remember whether or not she was asked for

3

consent. Further, she noted that there would have been no reason for her not to cooperate with officers by giving consent. Officer Hennessey, on the other hand, testified affirmatively that Kellogg did in fact consent. The Magistrate Judge found Officer Hennessey credible, and this determination deserves deference given that the Magistrate Judge had the opportunity to observe and hear both witnesses and assess their demeanors, putting him in the best position to determine credibility. *See Moss*, 286 F.3d at 868; *Irorere*, 69 F. App'x at 236.

Defendant argues that even if consent was given, it was not voluntary. The witnesses testimony indicates otherwise. Despite the fact that officers had guns drawn (though not pointed at anyone) when they surrounded Kellogg's residence, Kellogg's conversation with the officers inside was cordial, she was not in handcuffs, guns were not drawn, only two officers were present, and there were no threats made or promises offered. It is unclear how many officers were present during the conversation at the police station, but no one disputes that officers there were cordial, no guns were drawn, Kellogg was not in handcuffs, and no threats were made or promises offered. The Court agrees with the Magistrate Judge's determination that these facts establish that Kellogg freely and voluntarily provided consent to search the motel room.

### B. Authority to Consent

Defendant next argues that even if Kellogg voluntarily consented to the search, she did not have the actual or apparent authority to do so. The Court disagrees. "A search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common authority over the premises." *United States v. Clutter,* 914 F.2d 775, 777 (6th Cir.1990); *see also United States v. Matlock,* 415 U.S. 164, 171 (1974) (holding that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that the consent

4

was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected").

The Court in *Matlock* explained that common authority rests not on a third party's property interest but "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.*; *see also United States v. Burns*, 298 F.3d 523, 542 (6th Cir. 2002) ("The concept of 'common authority or control' enables a cooccupant such as Burns to consent to a search if that party has the right to use or possess the property.").

However, consent is not valid if another person with common authority over the property is present and objects. *See Georgia v. Randolph,* 547 U.S. 103, 105 (2006) (explaining that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out"); *see also United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007); *United States v. Penney*, 576 F.3d 297, 309 (6th Cir. 2009)). Consent is also insufficient if there is "evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection . . . ." *Randolph*, 547 U.S. at 121.

Applying the above law, the Magistrate Judge determined that Kellogg had common authority over the motel room such that she could properly consent to its search, that Defendant did not object to the search, and that officers did not remove Defendant from the premises with the intent of avoiding an objection. Defendant objects only to the first part: that Kellogg had common

5

authority over the room.

In *United States v. Jenkins*, while analyzing consent to search a tractor-trailer, the Sixth Circuit explained in dicta that although hotel management has "custodial access to a hotel room . . . there is little doubt that a simple 'go ahead, I don't live there' from the manager would be insufficient to justify search of a hotel room." 92 F.3d 430, 438 (6th Cir. 1996) (citing *Rodriguez*, 497 U.S. at 188). Defendant argues Kellogg "had no more authority to consent than the hypothetical 'hotel management' with custodial authority alluded to by the *Jenkins* Court" (Court File No. 41).

The Court does not find this an apt comparison. Here, using her debit card Kellogg herself rented the room, presumably allowing her to obtain additional room keys, access the room anytime, and control who was allowed in the room. In addition, she had spent time in the room earlier in the day and planned to return in the evening and perhaps spend the night. In short, this type of "mutual use of the property by [a] person[] generally having joint access or control for most purposes" made it reasonable to recognize that Kellogg had the "the right to permit the inspection in h[er] own right and that [Defendant] assumed the risk that [Kellogg] might permit the common area to be searched." *Matlock,* 415 U.S. at 171.

IV.     **CONCLUSION**

For the above reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 39). Defendant's motion to suppress will be **DENIED** (Court File No. 17).

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**